# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| BARBARA L. CURRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:15CV00698 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Barbara L. Curry, brought this action pro se pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 8 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 11, 13; see also Docket Entry 14 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB, alleging a disability onset date of April 8, 2008. (Tr. 248-50.) Upon denial of that application initially (Tr. 124-35, 155-63) and on reconsideration (Tr. 136-51, 165-72), Plaintiff requested a hearing de novo before an

Administrative Law Judge ("ALJ") (Tr. 173-74). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 76-116.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 57-70.) The Appeals Council thereafter granted Plaintiff's request for review for the limited purpose of amending the ALJ's decision to reflect a date last insured of December 31, 2015, rather than December 31, 2013, but otherwise affirmed the ALJ's denial of benefits (Tr. 1-8, 226-30), thus making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 2. [Plaintiff] did not engage in substantial gainful activity during the period from her alleged onset date of April 8, 2008 through her date last insured . . . .
>
> [Plaintiff] worked after the alleged disability onset date but this work activity did not rise to the level of substantial gainful activity. [Plaintiff] testified at the hearing that she worked from September 30, 2013, through March 13, 2014. This work could be considered an unsuccessful work attempt, although the average monthly earnings during the work period were above the statutory limits for substantial gainful activity.
>
> 3. Through the date last insured, [Plaintiff] had the following severe impairments: Bilateral Carpal Tunnel Syndrome; Degenerative Disk Disease of the Cervical Spine, with Severe and Chronic Lower Back Pain, with Radiculopathy; and Obesity.
>
> . . .
>
> 4. Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met

or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5.   [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform less than the full range of sedentary work . . . .

[Plaintiff] can stand for 2 hours in an 8-hour workday, at will; she can walk for 2 hours, at will; she can sit for 6 hours in an 8-hour workday, at will; and [Plaintiff] can lift 10 pounds occasionally and 5 pounds frequently; she can carry 10 pounds occasionally and 5 pounds frequently; she can use foot controls frequently with her right lower extremity, and occasionally with her left lower extremity; and she can use hand controls occasionally with her right upper extremity, and frequently with her left upper extremity.

[Plaintiff] can reach overhead and reach in all directions occasionally with her bilateral upper extremities; and she can feel, finger, and handle occasionally with her right upper extremity, and frequently with the left upper extremity. [Plaintiff] can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; and [Plaintiff] can never climb ladders, ropes, or scaffolds.

Further, [Plaintiff] can work in proximity to unprotected heights and moving mechanical parts occasionally; she can operate a motor vehicle frequently in the course of employment; she can occasionally work in proximity to humidity and wetness, and vibration; and she can never work in proximity to extremes of cold and heat.

. . .

6.   Through the date last insured, [Plaintiff] was unable to perform any past relevant work.

. . .

9.   [Plaintiff] has acquired work skills from past relevant work.

. . .

3

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, [Plaintiff] had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy.

. . .

11. [Plaintiff] was not under a disability, as defined in the [] Act, at any time from . . . the alleged onset date, through . . . the date last insured.

(Tr. 62-70 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might

4

accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving

5

a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1]  "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition."  Id.  "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps:  "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity

---

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons.  The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical."  Craig, 76 F.3d at 589 n.1 (internal citations omitted).

to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

### B. Assignment of Error

In Plaintiff's pro se Motion for Judgement, she alleges that, although she has "applied for several job[s] with 100's of companies, [the] gove[r]nment and temp[orary] agenc[ies]," no employer will hire her because of her medical conditions. (Docket Entry 11 at 1-2.) According to Plaintiff, "[c]ompanies need [her] to be able to lift and stand for long periods of time." (Id.) Plaintiff further contends that her disabling conditions include chronic neck and back pain, left shoulder pain, nerve damage and

---

[4] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

8

swelling in her legs, residuals from hernia surgery, elevated blood pressure, and bilateral carpal tunnel syndrome. (Id. at 2.) Plaintiff does not, however, raise any particular challenge to the ALJ's underlying findings or conclusions. (See id. at 1-3.)

Although the Court must construe pro se filings liberally, see Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam), the Court need not "craft arguments or conduct legal research on behalf of a litigant," Jarvis v. Colvin, No. 15-2796, 2016 WL 1077887, at *1 (7th Cir. Mar. 18, 2016) (unpublished); see also Rigsbay v. Colvin, No. 2:14-CV-2813-EFB, 2016 WL 1268006, at *3 (E.D. Cal. Mar. 30, 2016) (unpublished) (noting that "a pro se litigant is still required to establish her right to relief on the claims asserted"). The Court should construe Plaintiff's Motion to allege that substantial evidence fails to support the ALJ's RFC finding and his conclusion that Plaintiff can perform jobs existing in significant numbers in the national economy. See generally Dawson v. Astrue, No. 8:11-CV-01759-MBS, 2012 WL 6915249, at *8 (D.S.C. Oct. 31, 2012) (unpublished) ("[T]he Court construes Plaintiff's [pro se] briefs as challenging whether the ALJ's conclusion[s] that Plaintiff retains the capacity to perform a range of light work and is capable of performing past relevant work . . . are supported by substantial evidence."), recommendation adopted, 2013 WL 239130 (D.S.C. Jan. 22, 2013) (unpublished).

9

## 1. RFC

Substantial evidence supports the ALJ's RFC assessment for less than a full range of sedentary work with "significant manipulative limitations." (Tr. 68.) As part of the ALJ's RFC determination, he discussed in a fair degree of detail Plaintiff's medical treatment for (1) her neck and back impairments with her treating neurologist, Dr. William Spillane (see Tr. 64-65, 66); (2) her hypertension and chronic venous insufficiency with her primary care physician, Dr. Arlene Ramos (see Tr. 65-66); and (3) her carpal tunnel syndrome with treating neurosurgeon, Dr. Michaux Kilpatrick (see Tr. 66). In addition, the ALJ discussed and weighed the opinion evidence of record and, in particular, afforded "great weight to the medical findings and opinions of [Plaintiff's] treating physicians, Doctors Kilpatrick and Spillane," noting that "[t]he totality of their findings and opinions, from 2012 through 2014, essentially confirm that [Plaintiff] remains capable of performing sedentary work activity." (Tr. 68; see also Tr. 429, 480-88, 734-36.)

The ALJ also evaluated Plaintiff's credibility as part of the RFC assessment pursuant to the two-part test set forth by Craig, 76 F.3d at 594-95 and 20 C.F.R. § 404.1529. At part one, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." (Tr. 67.) Proceeding to part two, the ALJ concluded that

Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely credible . . . ." (Id.) In conjunction with that part two finding, the ALJ expressly considered Plaintiff's testimony regarding her impairments, her symptoms, her functional limitations, and her activities of daily living. (Tr. 66-67.) Additionally, the ALJ discussed the objective medical evidence, including the results of diagnostic testing such as magnetic resonance imaging ("MRI") and electromyography ("EMG"), the findings of consultative examiner Dr. Alan Rosenbloom indicating that Plaintiff maintained a "normal gait" and "could perform some manipulative tasks," and a Third Party Function Report completed by Plaintiff's mother reflecting that Plaintiff "could perform a wide range of usual daily activities adequately." (Tr. 67.) Lastly, the ALJ noted, "[w]ith further reference to [Plaintiff's] overall credibility," that Plaintiff "worked after her alleged onset date, earning wages in excess of the statutory amounts for substantial gainful activity," which "could reasonably show an ability to perform some types of work." (Tr. 68.)[5]

---

[5] Although Plaintiff's post-onset wages qualified, in terms of amount, as substantial gainful activity, (see Tr. 267 (reflecting that Plaintiff earned $7,390 at Thomas Built Buses Inc. in the fourth quarter of 2013, and $7,438 in the first quarter of 2014)); see also 20 C.F.R. § 404.1574(b)(2)(ii) (setting presumptive level of monthly earnings for substantial gainful activity); https://www.socialsecurity.gov/oact/cola/sga.html (indicating presumptive substantial gainful activity level as $1,040 in 2013 and $1,070 in 2014) (last visited Apr. 11, 2016), the ALJ found that Plaintiff's post-onset work constituted an "unsuccessful work attempt" (Tr. 62). The ALJ did not explain his reasoning for finding Plaintiff's post-onset work an unsuccessful work attempt
(continued...)

11

In sum, the ALJ supported his RFC with substantial evidence of record.

## 2. Step Five

After determining that Plaintiff's RFC did not permit her to return to any of her past relevant work (see Tr. 69), the ALJ proceeded to the fifth step of the SEP to determine whether other jobs existed in significant numbers in the national economy that Plaintiff could perform, see 20 C.F.R. § 404.1560(c). The Commissioner bears the burden of production at step five. See 20 C.F.R. § 404.1560(c)(2). To meet that burden, the ALJ posed a hypothetical question to the VE which contained the same exertional and non-exertional limitations as the RFC. (Compare Tr. 63, with Tr. 111-12.) In response, the VE testified that an individual with Plaintiff's limitations could perform the jobs of receptionist, information clerk/greeter, and telephone solicitor, provided the corresponding occupation numbers in the Dictionary of Occupational Titles ("DOT"), and the estimated numbers of such jobs in the national economy. (See Tr. 113.) The VE indicated, in compliance with Social Security Ruling 00-4p, Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and Vocational

---

[5] (...continued)
(see Tr. 62); however, under the regulations, work qualifies as an "unsuccessful work attempt" if it "lasted longer than 3 months . . . and ended, or was reduced below substantial gainful activity earnings level, within 6 months because of [the claimant's] impairment," 20 C.F.R. § 404.1574(c)(4). Here, Plaintiff testified that she worked at Thomas Built Buses from September 30, 2013, to March 13, 2014, when she resigned due to re-aggravation of her carpal tunnel syndrome symptoms. (See Tr. 80, 88-89.)

12

Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, 2000 WL 1898704, at *2 (Dec. 4, 2000), that his testimony harmonized with information in the DOT, with the exception of reaching, handling, and fingering, for which he utilized his own knowledge and experience. (Id.) Relying on the VE's testimony, and using Rules 201.29 and 201.22 of the Medical-Vocational Guidelines as a framework for decision, the ALJ concluded that jobs existed in significant numbers in the national economy that Plaintiff could perform, and that Plaintiff thus did not qualify as disabled. (See Tr. 69-70.)[6]

Plaintiff nevertheless alleges disability because employers will not hire her due to her medical conditions. (Docket Entry 11 at 1-2.) That argument provides no basis for relief. The applicable regulation makes clear that the Commissioner need not demonstrate that a particular claimant could actually obtain the jobs identified at step five:

> [The Commissioner] will determine that [a claimant is] not disabled if [his/her] [RFC] and vocational abilities make it possible for [him/her] to do work which exists in the national economy, but [he/she remains] unemployed because of-

---

[6] The Medical-Vocational Guidelines "categorize jobs by their physical-exertion requirements, namely, sedentary, light, medium, heavy, and very heavy. There are numbered tables for the sedentary, light, and medium level (tables 1, 2, and 3, respectively), and a specific rule for the heavy and very heavy levels. Based on the claimant's RFC, the ALJ must first determine which table to apply, i.e., if the claimant's RFC limits him to a sedentary exertional level, then Table No. 1 is the appropriate table. Next, based on the claimant's age, education, and previous work experience, the rule directs a finding of 'disabled' or 'not disabled.'" Black v. Astrue, No. 3:09CV599, 2010 WL 2306130, at *4 (E.D. Va. Apr. 26, 2010) (unpublished) (internal citations and footnotes omitted), recommendation adopted, 2010 WL 2306136 (E.D. Va. June 3, 2010) (unpublished).

13

> (1) <u>[His/Her] inability to get work</u>;
>
> (2) Lack of work in [his/her] local area;
>
> (3) <u>The hiring practices of employers</u>;
>
> (4) Technological changes in the industry in which [he/she has] worked;
>
> (5) Cyclical economic conditions;
>
> (6) No job openings for [him/her];
>
> (7) <u>[He/She] would not actually be hired to do work [he/she] could otherwise do</u>; or
>
> (8) [He/She does] not wish to do a particular type of work.

20 C.F.R. § 404.1566(c) (emphasis added); see also <u>Cole v. Colvin</u>, No. 13CV868, 2014 WL 4060145, at *4 (M.D.N.C. Aug. 14, 2014) (unpublished) (Schroeder, J.) ("Even if, as [the claimant] contends, he is overqualified for the job and employers would not hire him, that does not undermine the ALJ's conclusion. At step five, the Commissioner does not have to prove that [the claimant] actually could get hired for the position identified; the Commissioner may find a claimant not disabled even if employers' hiring practices result in the claimant not actually being hired." (citing 20 C.F.R. § 404.1566(c))).

In conclusion, the ALJ supported his step five finding with substantial evidence.

### III.  CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgement (Docket Entry 11) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be granted, and that judgment be entered for Defendant.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

April 14, 2016